(November 7, 1899.)

## COUCH v. MONTGOMERY.

[59 Pac. 16.]

CLAIM AND DELIVERY—CHANGE OF POSSESSION.—S. sold and delivered a certain number of cattle to T. After such sale and delivery T. sold and delivered to the defendant eleven head of said cattle; defendant took possession of the cattle so sold to him, and placed them in the custody of his brother. Subsequently, a question having arisen between S. and T. in regard to a balance claimed by S. from T. upon the sale between them, S. without the knowledge or consent of defendant seized and took into his possession the cattle sold by T. to defendant, *held*, that the continuity of defendant's possession having been broken by the unlawful act of plaintiff's vendor, plaintiff cannot invoke the provisions of section 3021 of the Revised Statutes to defeat defendant's title.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

Charles L. Heitman, for Appelant.

The sale of personalty must not only be accompanied by immediate delivery, but must also be followed by an actual and continued change of possession, to be valid against a subsequent purchaser in good faith. (*Tilson v. Terwilliger*, 56 N. Y. 273; *Harkness v. Smith*, 3 Idaho, 221, 28 Pac. 424; *Dean v. Walkinhorst*, 4 Cal. 78, 28 Pac. 60; *Watson v. Rodgers*, 53 Cal. 401.) There was no difference in the appearance or management or control of the cattle in controversy after the alleged sale by Smith to Traves, or the alleged sale by Traves to respondent, than there was before. The cattle were on Sam Smith's ranch, where they had always been. Smith had exclusive control of them, fed them, sheltered them, claimed them as his own; there were no new brands on them—at least respondent did not put his brand on them; there was absolutely nothing done or said by respondent after about October, 19, 1897, except a futile attempt to prosecute Sam Smith for larceny of the cattle, up to April 19, 1898, to indicate to the outside world that respondent had or made any claim thereto. (*Gallagher v. Williamson*, 23 Cal. 334, 86 Am. Dec. 114; *Woods v. Bugbey*, 29 Cal. 467; *Lay v. Neville*, 25 Cal. 552.) Under section 3021 of the Re-

vised Statutes of Idaho, the sole inquiry is, Was there "an immediate delivery, followed by an actual and continued change of possession"? (*Harkness v. Smith,* 3 Idaho, 221, 28 Pac. 424; *Bassinger v. Spangler,* 9 Colo. 175, 10 Pac. 809.)

John B. Goode, for Respondent.

There is no contradiction in the evidence that there was an actual, open, notorious and immediate delivery to the respondent, and followed by an actual change of possession at the time and place of the sale and transfer to him. The only question left open is, How long shall the vendee continue in possession and what amounts to a possession of such chattels as cattle; accustomed as they are to run on ranges and liable as they are to be fraudulently taken up and driven off by any trespasser who is actuated *animo furandi?* Certainly the same rule cannot be applied to cattle and such similar property as to small chattels which can be kept in one's domicile or carried upon one's person, and the courts have so held. (*O'Gara v. Lowry,* 5, Mont. 427, 5 Pac. 583; *Bassenger v. Spangler,* 9 Colo. 175, 10 Pac. 809-818.) The word "actual" in the clause of the statute of frauds, referring to a change of possession, was designed to exclude the idea of a more formal change of possession, and the word "continued" to exclude the idea of a merely temporary change. But it never was the design of the statute to give such an extension of meaning to this "continued change of possession" as to require, upon penalty of forfeiture of the goods, that the vendor should never have any control over or use of them. Continuance for all time is not required. (*Godchaux v. Mulford,* 26 Cal. 325, 85 Am. Dec. 178; *Bassenger v. Spangler,* 9 Colo. 175, 10 Pac. 809; *O'Gara v. Lowry,* 5 Mont, 427, 5 Pac. 583; *Parks v. Barney,* 55 Cal. 241; *Humphery v. Harkey,* 29 Cal. 627.) It is not necessary that the purchaser of property shall at all times have exclusive possession of it. He may hire it out to others, or even to the same party from whom he purchased it. (*Ferbrache v. Martin,* 3 Idaho, 573, 32 Pac. 254; *Murphy v. Braase,* 3 Idaho, 544, 32 Pac. 208; *Williams v. Lerche,* 56 Cal. 333.) It is fundamentally clear that a vendor whose title is derived through theft, trespass, conversion, or

other unlawful means, can transmit no title to a vendee. (26 Am. & Eng. Ency. of Law, 731, and cases cited.)

HUSTON, C. J.—Plaintiff brought suit against defendant to recover the value of eight head of cattle alleged to have been converted by defendant. Defendant denied ownership or right of possession of plaintiff to the cattle, and averred ownership in himself. The case was tried before the district court, with a jury, and verdict rendered for the defendant. From the judgment entered upon the verdict, and from the order denying plaintiff's motion for a new trial, the plaintiff appeals.

The facts in the case, as they appear from the record, are about as follows: On the twenty-eighth day of September, 1897, one Sam Smith sold to one E. C. Traves a bunch of cattle, for a stipulated price per head. On or about October 10, 1897, sixty-one head of the cattle so sold by Smith to Traves were delivered to Traves at a point on the Kootenai river, as per agreement. After such delivery by Smith to Traves, the defendant purchased eleven head of said cattle, which were segregated from the rest of the cattle purchased by Traves, and driven away by defendant to the premises of his brother, some three or four miles from the place of delivery, and there left by defendant. The balance of the cattle purchased by Traves of Smith were taken by Traves across the river to British Columbia. It would seem that some dispute arose subsequently between Smith and Traves touching the sale between them, and Smith thereupon went and took possession of the eleven head of cattle purchased by defendant of Traves, and drove them to his (Smith's) own ranch, and held them, against the protest and demand of the defendant, until about the last of March or the first of April, 1898, when he sold them to the plaintiff, who took them to British Columbia, where they were replevied by the defendant, and are still held by him. There is no question of the *bona fides* of the purchase either of the plaintiff or defendant; but appellant contends that the sale from Traves to the defendant not having been followed by an immediate delivery and an actual and continued change of possession, such sale was void, as against the plaintiff, under the provisions of section 3021 of

the Revised Statutes of Idaho. We are not in accord with ap-
pellant's construction of the statute. It is evident from the
record that after the purchase of the cattle by Traves from
Smith, and the delivery of the same to Traves, and the pay-
ment therefor by Traves, he (Traves) sold and delivered to
respondent eleven head of said cattle, and that respondent paid
for them; that there was an actual delivery of the cattle so
purchased by respondent; that respondent took the same into
his possession, and removed them to the ranch of his brother;
that subsequently, and without the knowledge or consent of
respondent, Smith took said cattle from the possession of re-
spondent and sold them to plaintiff. Smith could acquire no
title by such unlawful act; and to hold that a void title in the
vendor could ripen into a good and valid title in the vendee,
simply because the vendee was an innocent purchaser for value,
is absurd. There was an actual delivery, and the possession of
respondent would have been "continuous," but for the unlaw-
ful acts of Smith. The statute was not intended to aid or cover
frauds, but to prevent fraud. There is not anything in the record
showing, nor do we understand it is contended, that there was
any privity of interest between Smith and respondent, or that
respondent ever acquiesced in or consented to the acts of Smith
in taking and holding possession of the cattle. There is some
conflict of evidence upon immaterial matters, but the weight of
the evidence sustains the facts as we have herein given them;
and, the jury having so found, their conclusion will not be dis-
turbed.

There are various and numerous assignments of error by ap-
pellant, going to the admission of testimony and the instruc-
tions to the jury. We have examined them with considerable
care, but we can find nothing in them warranting a reversal.
The instructions given by the court we think state the law cor-
rectly, and are fully as favorable to appellant as the case would
warrant, and we find nothing contradictory therein. Finding
no reversible error in the record, the judgment of the district
court is affirmed, with costs to respondent.

Quarles and Sullivan, JJ., concur.

Points decided.

ON REHEARING.

(November 28, 1899.)

Per CURIAM.—Appellant has filed a petition for rehearing, which we have carefully examined. We find no question of law or fact in the petition which we did not consider on the hearing. No reason being shown why a rehearing should be granted, the petition therefor is denied.